Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6016 | **DATE** | April 20, 2001 |
| **CASE TITLE** | | *Ty v. Baby Me* | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Baby Me's motion to dismiss this action for want of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) [8-1] is denied. Baby Me shall file its answer by April 30, 2001. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | APR 25 2001 date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| ✓ | Copy to judge/**magistrate judge**. | | | | |
| RTS | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TY, INC., | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
|     v. | ) | 00 C 6016 |
| | ) | |
| BABY ME, INC., | ) | |
|     **Defendant.** | ) | |

DOCKETED
APR 2 5 2001

## MEMORANDUM AND ORDER

In this trademark and trade dress action, plaintiff Ty, a manufacturer of plush toys,

including Beanie Babies bean-bag toys, claims that bean-bag bears manufactured by defendant

Baby Me, a Hawaii corporation, are confusingly similar to Ty's Beanie Babies. Baby Me seeks to

dismiss this action under Fed. R. Civ. P. 12(b)(2), claiming that this court lacks personal

jurisdiction. For the reasons set forth below, Baby Me's motion is denied.

**I.    Background**

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of

personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and

other materials submitted by the parties. See Fed. R. Civ. P. 12(b). The following facts are thus

drawn from Ty's complaint and the evidence submitted by the parties.

Ty is a Delaware corporation with its principal place of business in Westmont, Illinois. Ty

is a leading manufacturer of plush animal toys, including plush toy bears. Ty owns numerous

copyrights for soft sculptures marketed as Beanie Babies plush toys. In addition, Ty owns

numerous federal trademark registrations as well as common law trademark rights and trade dress

rights in a variety of marks and designs associated with its line of Beanie Babies plush toys.



Ty's Beanie Babies have enjoyed phenomenal success since their introduction in 1993. Ty has sold over 1 billion Beanie Babies in the United States alone since November of 1993, and the Beanie Babies Collection toy line is among the top selling toys and collectibles in the United States. The tremendous popularity of Beanie Babies is reflected by the multitude of newspaper and magazine articles, television news stories and web sites devoted to collecting Beanie Babies toys.

Defendant Baby Me is a Hawaii corporation with its principal place of business on the island of Maui in the State of Hawaii. Baby Me manufactures and sells plush toy bears under the name "Baby Me Bears" through its retail establishment in Maui. In addition, for approximately seven months, Baby Me operated an Internet web site where consumers could purchase "Baby Me Bears" via the Internet and have the products shipped to their place of business or residence. According to Ty, in August 28, 2000 an Illinois resident purchased three "Baby Me Bears" from the Baby Me web site. Baby Me shipped these bears to the Illinois resident's home in Lombard, Illinois, on September 8, 2000.

Ty alleges that the Baby Me Bears are confusingly and substantially similar to its Beanie Babies plush toys, and thus infringe its copyright and trade dress. In addition, Ty contends that Baby Me infringed on its trademarks by including the word "beanies" as a meta-tag for the "Baby Me Bears" web site.[1]

On September 15, 2000, Ty's attorneys sent Baby Me Bears a cease and desist letter regarding the sale of Baby Me Bears. Baby Me's counsel contacted Ty's attorneys shortly

---

[1] A "meta-tag" is a specific word programmed within a website. Internet search engines look for meta-tags and direct consumers to websites which contain meta-tags corresponding to the consumer's search terms. Complaint at ¶ 31.

- 2 -

thereafter and informed them that Baby Me intended to keep selling its bears. In response, Ty

filed this action. Ty's suit includes claims for copyright infringement under 17 U.S.C. §§106 and

501, trademark infringement under 15 U.S.C. §1114(1), false designation of origin under 15

U.S.C. §1125(a), and trade dress infringement under 15 U.S.C. 1125(a). Ty also contends that

Baby Me committed unfair competition and deceptive trade practices in violation of federal and

Illinois law.

## II.     Discussion

### A.     Standard for Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2)

As noted above, in ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)

based on lack of personal jurisdiction, the court may consider matters outside the pleadings, such

as affidavits and other materials submitted by the parties. *See* Fed. R. Civ. P. 12(b). The plaintiffs

bear the burden of establishing personal jurisdiction by a preponderance of the evidence. *Turnock*

*v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). In making its determination regarding personal

jurisdiction, the court must resolve any factual disputes in the plaintiff's favor, but must accept the

allegations in the plaintiff's complaint as true only to the extent that they are not controverted by

other evidence in the record. *Id.* The court must also accept uncontested jurisdictional facts

presented by the defendants as true. *Connolly v. Samuelson*, 613 F. Supp. 109, 111 (N.D. Ill.

1985). With these standards in mind, the court turns to the parties' contentions regarding

jurisdiction.

### B.     Personal Jurisdiction: Fundamental Principles

In cases involving a federal question, a prima facie case for personal jurisdiction consists

of two elements. First, the plaintiff must establish that the defendant is amenable to service in the

forum state. A defendant is amenable to service if a federal statute provides therefor or if that defendant could be subjected to the jurisdiction of a court in the forum state through that state's long arm statute. Fed. R. Civ. P. Rule 4(k). This case involves the Lanham Act, 15 U.S.C. §1051 *et seq.*, which does not provide for service of process. Therefore, the court must consider whether Baby Me is amenable to service in Illinois under Illinois' long-arm statute, 735 ILCS § 5/2-209(a). *Swaim v. Moltan Co.*, 73 F.3d 711, 719-20 (7th Cir. 1996). Second, the plaintiff must establish that the court's exercise of personal jurisdiction over the non-resident defendant comports with Fifth Amendment Due Process. *LFG, L.L.C. v. Zapata Corp.*, 78 F. Supp. 2d 731, 734 (N.D. Ill. 1999), *citing United States v. DeOrtiz*, 910 F.2d 376, 381-82 (7th Cir. 1990).

Thus, to determine whether personal jurisdiction over Baby Me Inc. is proper, the court must consider: (1) whether jurisdiction is proper under Illinois' long-arm statute; and whether this court's assertion of jurisdiction is consistent with (2) the Illinois and (3) United States Constitutions. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). As the Seventh Circuit has explained, "[b]ecause the Illinois statute authorizes personal jurisdiction to the constitutional limits, the three inquiries mentioned above collapse into two constitutional inquiries – one state and one federal. *Id.*

### 1.    The State Inquiry

Under Illinois' long-arm statute, 735 ILCS § 5/2-209(a), Illinois state courts have general jurisdiction over nonresident defendants "doing business" in Illinois and specific jurisdiction over nonresident defendants if the claims arise from their "transactions" in Illinois. 735 ILCS 5/2-209(a) & (b). The Illinois long-arm statute also contains a "catch-all" provision which allows Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois

and United States Constitutions. 735 ILCS § 5/2-209(c). Thus, jurisdiction is coextensive with federal due process requirements. *See, e.g., Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992). Moreover, if jurisdiction exists under the "catch-all" provision, a defendant does not have to perform any of the enumerated acts set forth in the remainder of the statute. *Mors v. Williams*, 791 F. Supp. 739, 741 (N.D. Ill.1992).

In Illinois, general jurisdiction applies when the case neither arises from nor is related to the defendant's contacts with the forum and is permissible only if the defendant has "continuous and systematic general business contacts" with the forum. *RAR, Inc. v.. Turner Diesel, Ltd.*, 107 F.3d at 1277, *citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). On the other hand, specific jurisdiction applies when the court is asserting jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id., citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. at 416.

The central inquiries with respect to specific jurisdiction, which is at issue here, are whether the defendant purposefully established minimum contacts with the forum state and whether those contacts would make personal jurisdiction reasonable and fair under the circumstances. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d at 1277, *citing Burger King v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). "Crucial to the minimum contacts analysis is showing that the defendant 'should reasonably anticipate being haled into court [in the forum state] because the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities there.'" *Id.* (citations omitted).

The evolution of the Internet has required courts to confront new jurisprudential territory in the area of personal jurisdiction. An Internet web site is accessible to computer users throughout the United States, and for that matter, the entire world. Therefore, under a traditional approach to personal jurisdiction, the mere creation of a web site would arguably subject the creator to personal jurisdiction in every forum that the web site enters. The Ninth Circuit has rejected this viewpoint, holding that mere registration of a domain name for a web site without "something else" is not enough to create personal jurisdiction. *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

Although the Seventh Circuit has yet to set forth the parameters of the "something else" that allows a forum to exercise jurisdiction over a web site creator, other district courts in Illinois have adopted the sliding scale approach to Internet jurisdiction first set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See International Star Registry of Illinois v. Bowan-Haight Ventures, Inc.*, No. 98 C 6823, 1999 WL 300285 (N.D. Ill. 1999); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000); *Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928 (N.D. Ill. 2000); *First Financial Resources v. First Financial Resources, Corp.*, No. 00 C 3365, 2000 WL 1693973 (N.D. Ill. Nov. 7, 2000); *Ty Inc. v. Clark*, No. 99 C 5532, 2000 WL 51816 (N.D. Ill. Jan. 13, 2000). The parties have presented arguments using the *Zippo* framework, so the court will analyze whether the exercise of specific jurisdiction is proper using this standard.

In *Zippo*, the court explained that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952

- 6 -

F. Supp. at 1123-24. The court then delineated three categories of web sites based upon the nature of the site's commercial activity:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (internal citations omitted).

Under the *Zippo* sliding scale test, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. This means that, where a defendant actively conducts business over the Internet and generates revenue through direct commercial transactions with Illinois residents, it is subject to suit in Illinois. *Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d at 932.

Here, the Baby Me web site offered Baby Me bears for sale to consumers accessing its interactive site via the Internet. Specifically, the Baby Me web site contained a web page entitled "Baby Me Bears of Hawaii Easy Order Form" which featured pictures of the Baby Me bears as well as pricing information so that consumers could buy Baby Me bears and have them shipped to the address of their choice. The "Easy Order Form" also included the disclaimer that "[p]rices below include shipping and delivery confirmation to U.S. destinations only." Finally, the form

instructed users to "[c]all our toll free number or click on the bear to e-mail us if you are interested in purchasing Baby Me Bears for your retail business."

Baby Me's Vice-President, Mary Barra, submitted an affidavit stating that her company's bears were meant to be "distinctly Hawaiian" souvenirs. According to Ms. Barra, Baby Me created its web site "for the convenience of visitors to [Baby Me's] retail establishment in Hawaii who may wish to purchase additional 'Baby Me Bears of Hawaii' products as gifts after initially visiting Maui." Barra Affidavit at ¶¶ 16-17.

In other words, Baby Me targeted its web site to reach individuals outside Hawaii who wished to purchase Baby Me bears after returning home from a Hawaiian vacation. The Baby Me web site allowed consumers located throughout the United States to purchase Baby Me bears for a price which included shipping to any United States destination.[2] It was also designed to facilitate the ordering and shipping of Baby Me bears to customers throughout the United States. Baby Me did, in fact, sell Baby Me bears to at least one Illinois resident, as evidenced by the affidavit from an Illinois shopper who accessed the Baby Me web site and ordered three Baby Me bears which she promptly received at her Illinois address.

Simply put, even when the facts are construed in the light most favorable to Baby Me, the conclusion that Baby Me intended to conduct business with consumers throughout the entire United States – including Illinois – is inescapable. Therefore, the court finds that the Baby Me web site was one in which the "defendant clearly does business over the Internet" and that Baby Me chose to and in fact did sell its bears in Illinois. *See Zippo Manufacturing Co. v. Zippo Dot*

---

[2] The Baby Me web site also stated that prices for international shipping would be provided upon request, further demonstrating its intention to sell its products to anyone anywhere in the world who wished to purchase a Baby Me bear.

*Com, Inc.*, 952 F. Supp. at 1124. This means that, under *Zippo*, the exercise of specific

jurisdiction over Baby Me in Illinois is proper.

This conclusion is not altered by Baby Me's contention that the purchase of the three

Baby Me bears which ultimately found their way into Ty's hands was pretextual. Specifically, in

its reply memorandum, Baby Me asserts that the Illinois resident who bought three Baby Me bears

over the Internet was actually acting as an agent for Ty's counsel. This is an important point

because a plaintiff cannot manufacture jurisdiction by creating a contact between a defendant and

the forum state. *Millennium Enterprises, Inc. v. Millenium Music*, LP, 33 F. Supp. 2d 907, 923

(D. Or. 1999) (the defendant did not purposefully avail itself of the protections of a particular

state's forum when "it was an act of someone associated with the plaintiff, rather than defendants'

Web site advertising, that brought defendants' product into this forum").

The flaw with this argument is that it is entirely speculative. Baby Me could have sought

discovery relating to this issue and presented it to the court. Instead, Baby Me chose to present a

bare theory unsupported by any evidence. This tactical choice is problematic for Baby Me since

the court must construe all facts relating to jurisdiction in favor of the plaintiff, including disputed

or contested facts. *See, e.g., United Phosphorus, Ltd. v. Angus Chemical Co.*, 43 F. Supp. 2d

904, 913 (N.D. Ill. 1999). Under this standard, and in light of the fact that no evidence supports

Baby Me's pretextual sale argument, the court must conclude that Baby Me has failed to establish

that the sale of the three bears in Illinois featured in Ty's submissions was pretextual.

Baby Me also contends that its contacts with Illinois are attenuated and thus cannot

support the exercise of jurisdiction over it in Illinois. In essence, Baby Me claims that, at best, it

only engaged in sporadic commercial activity in Illinois. The fact that Baby Me's contacts may

have been limited does not, however, automatically mean that its contacts with Illinois were so minimal that it could not reasonably expect to be haled into an Illinois court.

This is because Illinois' long arm statute provides that torts committed in Illinois authorize the exercise of specific jurisdiction. 735 ILCS § 5/2-209(a)(2). A company that sells an allegedly infringing item to an Illinois customer has committed a tort in Illinois. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club, Ltd. Partnership*, 34 F.3d 410, 411-12 (7th Cir. 1994) (a court in the state where the victim suffered injury may exercise jurisdiction over the alleged tortfeasor); *International Star Registry of Ollinois v. Bowman-Haight Ventures, Inc.*, 1999 WL 300285 at *6 (same). Moreover, intellectual property infringement occurs where an infringing sale takes place rather than the state where the alleged infringer resides. *Id.* Thus, although Ty's trademark is national and the record does not show that Ty's purported injury occurred primarily in Illinois, Baby Me is subject to jurisdiction under § 2-209(a)(2) because it committed a tort in Illinois.

## 2.    The Federal Inquiry

Federal due process requires that the exercise of personal jurisdiction over a nonresident defendant be reasonable. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Pertinent factors include: (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) avoidance of multiplicity of suits on conflicting adjudications. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 115 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472-73. Federal due

process also requires the nonresident defendant to have "minimum contacts" with the forum state and to have "purposefully availed itself" of the privilege of conducting activities within the forum state. *See, e.g., International Shoe Co.*, 326 U .S. at 310; *Hanson v. Denckla*, 357 U.S. 235 (1958).

Baby Me asserts that allowing this suit to proceed in Illinois is unreasonable and hence would violate the Fifth Amendment. In support, Baby Me points to its small size, its location in Hawaii, many miles from Illinois, and Ty's superior financial resources. So, does the exercise of personal jurisdiction over Baby Me in Illinois comport with traditional notions of fair play and substantial justice? *See International Shoe Co. v. Washington*, 326 U.S. at 316. In answering this question, the court must bear in mind that, once a plaintiff has established a prima facie case supporting the exercise of personal jurisdiction over a defendant, that defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King v. Rudzewicz*, 471 U.S. at 476.

On Ty's side of the ledger, Illinois has an interest in providing a forum in which its residents can seek to protect their intellectual property rights. *See LFG v. Zapata Corp.*, 78 F. Supp. 2d 731, 739 (N.D. Ill. 1999) (Illinois has a strong interest in adjudicating disputes involving the alleged infringement of an Illinois company's trademark). In addition, as discussed above, Baby Me operated an Internet web site for the purpose of selling products to individuals across the United States and conducted business with at least one Illinois resident.

On the other hand, defending this suit in Illinois will be difficult for Baby Me, which is a two person company located in Hawaii. Nevertheless, while a defendant's burden in litigating in the forum state is relevant, inconvenience alone is not enough to defeat personal jurisdiction.

- 11 -

*Euromarket Designs, Inc.*, 96 F. Supp. 2d at 840 (unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of personal jurisdiction). Although Hawaii is indeed far from Chicago, simply shifting the inconvenience from one party to the other does not lead to litigation in a forum which is more convenient overall. *See id.*

In addition, Baby Me has failed to point to any authority supporting the proposition that the small size of a company can immunize it from suit in states where it has conducted business. While Baby Me clearly does not wish to be involved in litigation in Illinois, it purposefully injected itself into Illinois by setting up its web site as it did, and by choosing to do business with an Illinois resident. It thus cannot be heard to complain that litigation arising out of its contacts with Illinois is inconvenient.

Moreover, as this court has previously noted, the fact that a defendant's contacts with the forum state are limited because the defendant is conducting a global business does not protect it from suit in a state where it has purposefully conducted business. As this court has explained:

> The court . . . declines to award an alleged infringer a free pass to litigate in its chosen forum simply because its allegedly infringing activities emanated from an Internet site created and maintained in its home turf. When [the defendant] designed her site, she intended to interact with purchasers in Illinois, as well as elsewhere. Shopping via the Internet is fundamentally different from shopping in a traditional store, as an individual who wishes to make a purchase can do so from a computer located anywhere, at any time. Each Internet transaction is connected to the location of the seller . . . as well as the varying locations of the Internet-surfing Beanie Baby [or Baby Me bear] aficionados. If [the defendant] is infringing on Ty's trademarks, she is, therefore, doing so in a plethora of locations, including Illinois.

*Ty v. Collett*, No. 99 C 692, 1999 WL 300290 *5 (N.D. Ill. May 6, 1999).

Finally, the court acknowledges that, if Ty prevails on its claims, it will have been equally injured in all of the locations where Baby Me bears were purchased as opposed to injured specifically in Illinois.[3] However, this does not mean that Ty's injury occurred primarily in Hawaii, where Baby Me is located. The location of the alleged infringer is not the only relevant factor in determining the situs of material events in trademark infringement actions. *Northwestern Corp. v. Gabriel Manufacturing Co.*, No. 96 C 2004, 1996 WL 73622 *5 (N.D. Ill. Feb. 16, 1996). Instead, "a substantial part of the events triggering trademark infringement may occur both in the district where the infringer is located and [the district] where the trademark owner is located and confusion is likely to occur." *Id.*

Here, Ty's complaint centers around Baby Me's allegedly infringing web site, which is accessible globally. Thus, confusion is just as likely to occur in Illinois (or anywhere in the world, via the Internet) as in Hawaii. Moreover, Illinois is substantively connected to this action because, if Ty ultimately prevails, Ty will have been injured both in Illinois and Hawaii (and anywhere else Baby Me bears were sold). In addition, "advertising on the Internet targets no one in particular and everyone." *International Star Registry of Ollinois v. Bowman-Haight Ventures, Inc.*, No. 98 C 6823, 1999 WL 300285 *6 (N.D. Ill. May 6, 1999), *citing Millenium Enterprises v. Millenium Music, LP*, 33 F. Supp. 2d at 914. Thus, a defendant cannot shield itself from suit by claiming that a web site which invites orders from customers in Illinois (as well as elsewhere)

---

[3] Because Baby Me has failed to produce any evidence relating to the location of its sales, the court declines to accept its unsupported assertion that the vast majority of its sales take place in Hawaii. Since Baby Me is a Hawaiian company which operated a web site for seven months, this may well be the case. On the other hand, Ty may also be correct in positing that Baby Me had a strong customer base in Illinois and hence decided not to present evidence relating to the locations of its customers. Because both views are pure speculation unsupported by any admissible evidence, the court declines to accept either view.

- 13 -

was not directed at Illinois residents. Thus, while Ty's suit is not related specifically to Baby

Me's activities in Illinois, Illinois has a connection to this action despite the fact that Baby Me did

not specifically target Illinois customers.

After balancing these factors, the court finds that the exercise of jurisdiction in Illinois

over Baby Me does not violate traditional notions of fair play and substantial justice.

Accordingly, Baby Me's motion to dismiss is denied.

**III.    Conclusion**

For the foregoing reasons, Baby Me's motion to dismiss this action for want of personal

jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) is denied.


DATE:  4-20-01

Blanche M. Manning
United States District Judge

00cv6016.md

- 14 -